

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Matthew A. Haven*                    36 S. Charles Street            DIRECT: 410-209-4955
*Assistant United States Attorney*    Suite 400                       MAIN: 410-209-4800
Matthew.Haven@usdoj.gov               Baltimore, MD 21201-3119        FAX: 410-962-2310

April 23, 2021

*Sent via CM/ECF*

The Honorable Paul W. Grimm
United States District Judge
United States Courthouse
6500 Cherrywood Lane
Greenbelt, Maryland 20770

      Re:    **Notice of Intent to File Motion to Dismiss or for Summary Judgment**
              *Humane Soc. of the U.S., et al., v. NIH, et al.*, **Case No. 21-121-PWG**

Dear Judge Grimm:

      Pursuant to the Court's Letter Order (ECF No. 5), the United States files this Notice of Intent to file a Motion to Dismiss or for Summary Judgment. Plaintiffs' Complaint asserts that NIH is unlawfully and arbitrarily keeping 44 chimpanzees previously used for research at a facility called Alamogordo Primate Facility ("APF") in New Mexico, instead of moving the chimpanzees to Plaintiffs' preferred location, Chimp Haven in Louisiana. The United States intends to argue that Plaintiffs (1) do not have standing, (2) raise issues that are committed to agency discretion under the Administrative Procedure Act, (3) assert claims that rest on an incorrect interpretation of statutory language, and (4) fail to identify arbitrary or capricious action by NIH.

      In 1986, the NIH launched an initiative to breed chimpanzees, which were thought to be useful for AIDS research. However, chimpanzees did not prove as suitable a model as expected for AIDS research, and as a result, the Government had a surplus of several hundred chimpanzees no longer needed in medical research. These "surplus" chimpanzees were housed in federally funded research laboratories like APF.

      In 1994, the NIH asked the National Research Council (NRC) to provide advice on the future needs for research involving chimpanzees and options for their long-term care. Congress enacted the CHIMP Act on December 20, 2000 to address many of the recommendations included in the NRC report, including delegation to HHS (and NIH) the responsibility for establishing a sanctuary system for chimpanzees no longer needed for research. P.L. 106-551. The CHIMP Act addresses two categories of chimpanzees: those that are owned by the Government, and those that are not. Section 283m(c), the language at the heart of this lawsuit, states that "[a]ll surplus chimpanzees owned by the Federal Government shall be accepted into the sanctuary system." Fifteen years after the CHIMP Act was passed, in November 2015, the NIH decided that it would no longer conduct or support biomedical research involving chimpanzees, and that all NIH-owned chimpanzees were eligible for retirement and relocation to Chimp Haven.

NIH developed a plan for the relocation of the chimpanzees. The plan states that chimpanzees will be retired to the sanctuary when space becomes available and on a timescale that considers the health, welfare, and social grouping of individual chimpanzees. To date, many of the APF chimpanzees have already been moved to Chimp Haven, but others have age-related ailments that increase their risk of suffering severe adverse events during the transfer and relocation process. NIH was concerned, and still believes, that at-risk chimpanzees cannot be moved safely.

To address this issue, NIH established a Council Working Group on January 26, 2018. This working group was charged with providing advice and recommendations on factors for attending veterinarians to consider when deciding whether to relocate chimpanzees. The Working Group's efforts culminated in a 103-page report which recommended, among other things, that NIH relocate all chimpanzees "unless relocation is extremely likely to shorten their lives."

The report and recommendations were adopted and transmitted to NIH, which then issued a request for public comments in the Federal Register. After considering the comments and other information, NIH decided on October 18, 2018 to accept the Working Group recommendations, including the recommendation that NIH develop standardized approaches for assessing each chimpanzee based on its health, behavior, social, and environmental requirements, and to enlist the advice of a panel of veterinarians to inform final relocation decisions. NIH considered comments, such as the arguments Plaintiffs make here, that "all NIH-owned or -supported chimpanzees should be relocated." The agency rejected these arguments because "federal law prohibits a facility from transporting an animal that would be endangered by the transport."

After NIH considered each individual chimpanzee's case, the NIH Director issued a statement explaining that only the 44 frailest chimpanzees will remain at APF, and that NIH had moved all chimpanzees to Chimp Haven that could be safely moved. Plaintiffs' lawsuit followed this "decision." Count I of Plaintiffs' Complaint asserts that NIH must transfer all federal chimpanzees to Chimp Haven regardless of their health or well-being. In support, Plaintiffs cite the CHIMP Act, which states "[a]ll surplus chimpanzees owned by the Federal Government shall be accepted into the sanctuary system." 42 U.S.C. § 283m(c). Plaintiffs opine that the words "shall be accepted" requires NIH to send all surplus/retired chimps to Chimp Haven under all circumstances. This interpretation cannot be correct as a matter of law.

Plaintiffs' interpretation is at odds with the Animal Welfare Act and its implementing regulations. 7 U.S.C. § 2131 *et seq.*, 9 C.F.R. Parts 1 through 4. This statute and these regulations require, prior to transport, a health certificate signed by a licensed veterinarian for each chimpanzee. Those certificates may only be issued if the chimpanzee is free of any infectious disease or physical abnormality which would endanger the animal or other animals. Also, existing regulations do not allow for transport of chimpanzees who are ill, injured, or in physical distress. NIH cannot lawfully adopt Plaintiffs' interpretation and require the cross-country transport of all chimpanzees without considering these factors. Nor can the Court. The Court is "not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551 (1974). Adopting Plaintiffs' interpretation of the CHIMP Act would require a complete disregard of existing law, which runs contrary to principles of statutory interpretation.

Plaintiffs also do not have standing. The organizational Plaintiffs claim financial injuries, stating that NIH has diminished the value of their investments and efforts, frustrated their purpose, and forced them to "abruptly divert substantial resources." Compl. ¶¶ 18-19. Yet, there are several cases which reject this theory of standing – namely that diversion of resources and undertaking litigation does not give an organization standing. *E.g.*, *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012). The individual Plaintiffs also have no standing. *See N.E. Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*, 208 F. Supp. 3d 142, 165-66 (D.D.C. 2016).

Plaintiffs' claims are further barred as a matter of law under the APA. First, the counts asserted by Plaintiffs relate to action that "is committed to agency discretion by law." 5 U.S.C. ¶ 701(a)(2). Courts cannot review agency action "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *Forsyth Cnty. v. U.S. Army Corps of Engineers,* 633 F.3d 1032, 1041 (11th Cir. 2011). Here, the CHIMP Act provides zero guidance as to how NIH should determine if it should transfer or not transfer a federal chimpanzee. *See* 42 U.S.C. § 283m(c). The Act merely states that retired chimpanzees "shall be accepted" and provides no guidance as to how or when. In the absence of such guidance, NIH may create the standards it deems appropriate, which it has done after significant study.

Last, even if the Court disagrees and finds that the CHIMP Act did not commit these decisions to NIH's discretion, NIH's individualized decisions not to transfer each of the remaining 44 chimpanzees were not arbitrary and capricious. In Count II, Plaintiffs assert that NIH should not have assumed that chimpanzees must be anesthetized during transport, and argue that NIH failed to consider the benefits that the chimpanzees would receive at Chimp Haven, measures to mitigate potential risk, and examples of successful transport of chimpanzees with serious health conditions. *See* Compl. ¶¶ 120-21. While Plaintiffs might disagree with NIH's assessment of the myriad risks and benefits of transferring frail chimpanzees, the question for the Court is whether NIH's decision is "within the bounds of reasoned decisionmaking." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Coun.*, 462 U.S. 87, 105 (1983). Here, NIH relied on its own qualified experts, and as explained above, it created and followed a highly detailed and well-considered process for determining whether it was safe to transfer each individual chimpanzee. NIH's decisions and decision-making process cannot be deemed arbitrary and capricious as a matter of law. *Marsh v. Or. Nat. Resources Coun.*, 490 U.S. 360, 378 (1989) ("When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive.").

The United States expects to advance these arguments in a Motion to Dismiss or for Summary Judgment, and respectfully requests that the Court permit it to file such a motion.

    Very truly yours,

    Jonathan F. Lenzner
    Acting United States Attorney

    */s/ Matthew A. Haven*
    Matthew A. Haven
    Assistant United States Attorney