**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, *et al.*, ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 21-cv-00121-LKG |
| v. ) ) | Dated: December 13, 2022 |
| NATIONAL INSTITUTES OF HEALTH, *et al.*, ) ) ) ) | |
| Defendants. ) ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

    This civil action involves a challenge to the National Institute of Health's ("NIH") decision not to transfer all chimpanzees housed at the Alamogordo Primate Facility ("APF") to a retirement sanctuary known as "Chimp Haven" (the "Ineligibility Decision"), brought by The Humane Society of the United States ("The Humane Society"), The Human Society Legislative Fund, Anima Protection of New Mexico, and several individually name plaintiffs.  *See generally* Compl. ECF No. 1.  The parties have filed cross-motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the following issues: (1) whether the NIH's Ineligibility Decision violates the Chimpanzee Health Improvement, Maintenance and Protection Act ("CHIMP Act"), 42 U.S.C. § 283m; (2) whether the Ineligibility Decision is consistent with the Animal Welfare Act ("AWA") and its implementing regulations, 7 U.S.C. § 2143, 9 C.F.R. §§ 2.38(h) and 3.90; and (3) whether the Court should afford deference to the NIH's Ineligibility Decision.  *See generally* Pl. Mot., Pl. Mem., Def. Mot. and Def. Mem.  The Government has also moved to dismiss this matter upon the grounds that, among other things, the Ineligibility Decision is reasonable and permissible under the CHIMP Act.  *See* Def. Mot. to Dismiss.  No

hearing is necessary to resolve these motions.[1]  LR 105.6.  For the reasons set forth below, the Court: (1) **GRANTS-in-PART** Plaintiffs' motion for partial summary judgment; (2) **DENIES** the Government's cross-motion for summary judgment; and (3) **DENIES** the Government's motion to dismiss.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.   Factual Background

In this civil action, Plaintiffs challenge NIH's decision not to transfer all chimpanzees housed at APF to a retirement sanctuary known as "Chimp Haven," pursuant to the Administrative Procedure Act and the CHIMP Act.  *See generally* Compl.  The organizational Plaintiffs, The Humane Society, The Human Society Legislative Fund and Anima Protection of New Mexico, are non-profit organizations that advocate for the protection of animals through law and policy.  Compl. at ¶¶ 16, 21, 26.  The individually named Plaintiffs are individuals who have worked closely with chimpanzees in their professional capacities.  *Id.* at ¶¶ 35, 39, 43.

Defendant, NIH, is a federal agency that oversees the federal sanctuary system, holds title to the APF chimpanzees, and is ultimately responsible for their retirement to federal sanctuary under the CHIMP Act.  *Id.* at 48.  Defendant James M. Anderson is the Deputy Director of the NIH and Director of NIH's Division of Program Coordination, Planning and Strategic Initiatives.  *Id.* at ¶ 50.

<u>The CHIMP Act And The Federal Sanctuary System</u>

In 2000, Congress passed the CHIMP Act, to "provide for the lifetime care of chimpanzees that have been used, or were bred or purchased for use, in research conducted or supported by the National Institutes of Health, the Food and Drug Administration, or other agencies of the Federal Government."  43 U.S.C. § 283(m).  The CHIMP Act accomplishes this

---

[1] On June 10, 2022, Plaintiffs requested a hearing on their dispositive motion with regards to Count I of the complaint.  ECF No. 51.

[2] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); Plaintiffs' motion for partial summary judgment ("Pl. Mot.") and the memorandum in support thereof ("Pl. Mem."); and the Government's motion for summary judgment ("Def. Mot.") and the memorandum in support thereof. ("Def. Mem.").

goal through the funding of a federal sanctuary system. *Id.*

To that end, in 2015, NIH officially announced that it would cease biomedical research on chimpanzees. Compl. at ¶ 75; Def. Mot. Ex. 3 at ¶ 5. ECF No. 41-3. NIH announced that its Council of Councils would establish a working group tasked with "assessing the safety of relocating chimpanzees" from laboratories to sanctuaries in 2016. Compl. at ¶ 79; Def. Mem. at 5; Def. Ex. 2. At the time of this announcement, 288 surplus chimpanzees owned or supported by NIH remained in laboratories awaiting transfer. Compl. at ¶ 79. The NIH working group recommended that: (1) NIH relocate all surplus chimpanzees to a retirement sanctuary known as "Chimp Haven," unless doing so is "extremely likely" to shorten their lives; (2) NIH should develop a standardized approach for evaluating the health of individual surplus chimpanzees to inform relocation decisions; and (3) all facilities housing NIH-owned or supported chimpanzees should adopt the American Society of Anesthesiologists' standardized five-category scale to categorize the health status of individual surplus chimpanzees. Compl. at ¶ 81; Def. Mot. Ex. 3. ECF No. 24-4.

Chimp Haven is located on 200 acres of forested land in Keithville, Louisiana. Compl. at ¶ 6. The sanctuary provides for the permanent retirement of laboratory chimpanzees in a natural habitat with access to top-quality veterinary and behavioral care. *Id.* Chimp Haven provides a home for both NIH-owned chimpanzees (known as surplus chimpanzees), and non-NIH-owned chimpanzees. Currently, Chimp Haven is home to approximately 300 chimpanzees who live in large, complex social groups with multi-dimensional enclosures and naturally forested habitats. *Id.* at ¶ 3.

<u>The NIH's Ineligibility Decision</u>

On October 24, 2019, NIH announced that not all APF chimpanzees would be transferred to Chimp Haven. Compl. at ¶ 10. And so, certain APF chimpanzees remain housed at APF's secured facility. Pl. Mem. at 7-8. In this regard, 44 of the 138 chimpanzees currently awaiting relocation from APF to Chimp Haven have been denied transfer under the Ineligibility Decision. Compl. at ¶ 89; Def. Mem. at 6. It is undisputed that the reason that these chimpanzees have not been transferred to Chimp Haven include: (1) the need for daily diabetes medication; (2) pre-diabetes; (3) cardiovascular disease; (4) poorly controlled hypertension; (5) renal conditions; (6) arthritis; (7) a leg amputation; and (8) the existence of social bonds with other APF chimpanzees

that, if disrupted, could negatively affect a chimpanzee's psychological well-being. Compl. at ¶ 93; Def. Mem. at 7. Because NIH has deemed these 44 chimpanzees to be the frailest, the agency maintains that it has transferred all chimpanzees that could be safely moved to Chimp Haven. Def. Mem. at 6.

### B.  Procedural Background

Plaintiffs commenced this action on January 14, 2021. *See generally Compl*. On June 14, 2021, the Government moved to dismiss this matter, pursuant to Fed R. Civ. P. 12(b)(6). Def. Mot. to Dismiss. On December 15, 2021, the Court denied-in-part the Government's motion to dismiss and held, among other things, that Plaintiffs had standing to pursue their claims. ECF No. 33.

On February 2, 2022, Plaintiffs filed a motion for partial summary judgment and a memorandum in support thereof. Pl Mot.; Pl. Mem. On March 22, 2022, the Government filed a response in opposition to Plaintiffs' motion, a cross-motion for summary judgment and a memorandum in support thereof. Def. Mot. and Def. Mem.

On April 29, 2022, Plaintiffs filed a response in opposition to the Government's cross-motion for summary judgment and a reply in support of their motion for partial summary judgment. Pl Resp. and Pl. Rep. On June 2, 2022, the Government filed a reply in support of its cross-motion. Def. Rep.

These motions having been fully briefed; the Court resolves the pending cross-motions.

## III.  LEGAL STANDARDS

### A.  Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

4

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256. When faced with cross-motions for summary judgment, the Court must review each motion separately on its own merits "to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger,* 122 F.3d 58, 62 n. 4 (1st Cir. 1997) (citation and internal punctuation omitted).

    **B.**    **Statutory Construction**

The first step when interpreting a statute "'is to determine whether the language at issue has a plain and unambiguous meaning' by looking to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Orquera v. Ashcroft*, 357 F.3d 413, 418 (4th Cir. 2003) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997)); *see also Am. Acad. Of Pediatrics,* 379 F.Supp.3d 461, 485 (D. Md. 2019) (explaining that to interpret a statute, the Court first looks at the language in the statute and determines whether it has a plain and unambiguous meaning.) (quotations omitted). In this regard, the Supreme Court has held that the "cardinal rule" of plain meaning review is "that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context." *Conroy v. Aniskoff*, 507 U.S. 511, 515 (1993)(citing *King v. St. Vincent's Hosp.*, 502 U.S. 215 (1991)).

Given this, the Court must consider the context in which the statutory words are used, because the Court does not construe statutory phrases in isolation. *See Ayes v. U.S. Dep't of*

*Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006); *see also  Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,* 559 U.S. 280, 290 (2010) (explaining that "[c]ourts have a duty to construe statutes, not isolated provisions").  And so, when the Court interprets federal statutes its goal is to effectuate the intent of Congress. *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010).

### C. The CHIMP Act

The CHIMP Act provides, in relevant part, that:

> The Secretary shall provide for the establishment and operation in accordance with this section of a system to provide for the lifetime care of chimpanzees that have been used, or were bred or purchased for use, in research conducted or supported by the National Institutes of Health, the Food and Drug Administration, or other agencies of the Federal Government, and with respect to which it has been determined by the Secretary that the chimpanzees are not needed for such research (in this section referred to as "surplus chimpanzees").

42 U.S.C. § 283m(a).  The CHIMP Act further provides that "all surplus chimpanzees . . . shall be accepted into the sanctuary system."  42 U.S.C. § 283m(c).

### D. The Animal Welfare Act And Implementing Regulations

Lastly, the AWA regulates the treatment of animals in research, testing, exhibition, and transportation of animals by dealers. 7 U.S.C. § 2143.  The regulations that implement the AWA set forth the minimal care required for transportation as applied to nonhuman primates.  In this regard, the regulations set forth in 9 C.F.R. § 2.38(h) provide that no research facility "shall transport in commerce any dog, cat or nonhuman primate unless the dog, cat or nonhuman primate is accompanied by a health certificate executed and issued by licensed veterinarian."  9 C.F.R. § 2.38(h)(1).  The regulations regarding the transportation of nonhuman primates set forth in 9 C.F.R. § 3.90(c) also provide that "if a nonhuman primate is obviously ill, injured, or in physical distress, it must not be transported in commerce, except to receive care for the condition."  9 C.F.R. § 3.90(c).

### IV. LEGAL ANALYSIS

The parties have filed cross-motions for summary judgment, pursuant to Fed. R. Civ. P. 56, on the following issues:  (1) whether the NIH's Ineligibility Decision violates the CHIMP

Act; (2) whether the Ineligibility Decision is consistent with the AWA and its implementing regulations; and (3) whether the Court should afford deference to NIH's Ineligibility Decision. *See generally* Pl. Mot., Pl. Mem., Def. Mot. and Def. Mem.

Specifically, Plaintiffs argue that NIH's Ineligibility Decision contravenes the CHIMP Act, because: (1) the plain language of that Act requires the transfer of all APF chimpanzees to Chimp Haven; (2) such a transfer is consistent with the intent of Congress; and (3) the Court should afford no deference to NIH's interpretation of the CHIMP Act. Pl. Mem. at 9-21. Plaintiffs also argue that the AWA and its implementing regulations do not require that NIH maintain the APF chimpanzees in a laboratory environment. *Id*. at 21-30. And so, Plaintiffs request that the Court vacate the Ineligibility Decision and remand this matter to NIH. *Id*. at 30.

The Government counters that the Ineligibility Decision is consistent with the CHIMP Act, because the plain language of this statute requires only that the surplus chimpanzees offered by NIH be accepted into CHIMP Haven. Def. Mem. at 3-5. And so, the Government maintains that, when read in context, the plain language of the CHIMP Act does not require that NIH transfer surplus chimpanzees to the federal sanctuary system regardless of their health status. *Id*. at 7.

For the reasons that follow, the Court reads the plain and unambiguous language of the CHIMP Act to require that NIH transfer all APF chimpanzees to the federal sanctuary system. And so the Court: (1) **GRANTS-in-PART** Plaintiffs' motion for partial summary judgment; (2) **DENIES** the Government's cross-motion for summary judgment; and (3) **DENIES** the Government's motion to dismiss.

    A.  **The CHIMP Act Mandates The Transfer Of All APF Chimpanzees**

As an initial matter, the plain language of the CHIMP Act requires that all APF chimpanzees be transferred to the sanctuary system. *See* 42 U.S.C. § 283m(c). The United States Court of Appeals for the Fourth Circuit has held that the first step when interpreting a statute "'is to determine whether the language at issue has a plain and unambiguous meaning' by looking to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Orquera v. Ashcroft*, 357 F.3d 413, 418 (4th Cir. 2003) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997)); *see also Am. Acad. Of Pediatrics,* 379 F.Supp.3d 461, 485 (D. Md. 2019)(explaining that to interpret a statute, the

Court first looks at the language in the statute and determines whether it has a plain and unambiguous meaning.) (quotations omitted).

In this case, the relevant language in the CHIMP Act provides that:

> The Secretary shall provide for the establishment and operation in accordance with this section of a system to provide for the lifetime care of chimpanzees that have been used, or were bred or purchased for use, in research conducted or supported by the National Institutes of Health, the Food and Drug Administration, or other agencies of the Federal Government, and with respect to which it has been determined by the Secretary that the chimpanzees are not needed for such research (in this section referred to as "surplus chimpanzees").

42 U.S.C. § 283m(a). Subsection (c) of the CHIMP Act further provides that "*all* surplus chimpanzees . . . *shall be accepted into the sanctuary system*. . . " and that "any chimpanzee that is not owned by the Federal Government can be accepted into the system if the owner transfers to the sanctuary system title to the chimpanzee." 42 U.S.C. § 283m(c) (emphasis supplied).

The Court agrees with the parties that the above language is plain and unambiguous. Pl. Mem. at 20 ; Def. Mem. at 19-20. This language makes clear that the Secretary of Health and Human Services, who has delegated this authority to NIH, "shall provide for the establishment and operation . . . of a system to provide for the lifetime care of chimpanzees." 42 U.S.C. § 283m(a). And so, the Court reads subsection (a) of the Act to require that NIH establish a federal sanctuary system to provide lifetime care for the APF chimpanzees. *Id*.

This requirement must be read in tandem with subsection (c) of the Act, which also provides that "*[a]ll* surplus chimpanzees owned by the Federal Government *shall be accepted* into the sanctuary system." *Id.* § 283m(c) (emphasis supplied). The Court interprets the word "all" in subsection (c) to mean all surplus chimpanzees (*i.e.*, those chimpanzees owned by the Federal Government that are no longer needed for research.). *Id*.

Plaintiffs also persuasively argue that the word "accepted," as used in subsection (c), should be read to mean "to give admittance" to the sanctuary system. *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/accept (last visited Jan. 31, 2022); *see also* 42 C.F.R. § 9.5(c)(2) ("chimpanzees not owned or supported by the Federal Government may be *admitted* to the sanctuary."

The use of the word "shall" in subsection (c) of the CHIMP Act also makes clear that

8

the requirement to transfer all surplus chimpanzees to sanctuary is a mandatory one. Indeed, as the Supreme Court has held, the mandatory word "shall" normally creates an obligation that is impervious to discretion. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (the mandatory word "shall" "normally creates an obligation impervious to . . . discretion") (citation omitted). And so, the Court reads subsections (a) and (c) of the Act together, to mean that Congress intended for all surplus chimpanzees to be given admittance into the federal sanctuary system.[3]

Other language in the CHIMP Act supports such a reading of this statute. Congress also addresses whether chimpanzees that are not owned by the Federal Government (non-surplus chimpanzees) can be accepted into the federal sanctuary system in the CHIMP Act. In this regard, the Act provides that NIH "may, in the discretion of the [agency], accept into the system chimpanzees that are not surplus chimpanzees." 42 U.S.C. § 283m(d)(2)(K); *see also id.* § 283m(c) ("any chimpanzee that is not owned by the Federal Government *can* be accepted into the system" (emphasis added)).

Notably, Congress uses the word "may" in the Act's provision regarding the acceptance of non-surplus chimpanzees. By doing so, Congress has made clear that it intends for NIH to have discretion with regards to the acceptance of non-surplus chimpanzees, but to have no such discretion with regards to the acceptance surplus chimpanzees into the federal sanctuary system. *Loughrin v. United States*, 573 U.S. 351, 358 (2014). "[W]hen Congress includes particular language in one section of a statute but omits it in another . . . this Court presume[s] that Congress intended a difference in meaning." (third alteration in original) (citation and internal quotation marks omitted).

The legislative history for the CHIMP Act also reinforces the Court's reading of this statute to mandate the transfer of all APF chimpanzees to the sanctuary system. The Senate Report that accompanied the CHIMP Act provides, in relevant part, that:

---

[3] The parties appear to agree that NIH is not obligated to transfer a "moribund" chimpanzee to sanctuary. Pl. Mem. at 4. ECF No.45; Def. Mem. at 4-5. ECF No. 50. Plaintiffs also acknowledge that the CHIMP Act affords NIH discretion to determine whether a federal chimpanzee is surplus, *i.e.*, no longer needed for research purposes. Pl. Mem. at 2.

> The CHIMP Act will establish a sanctuary system for chimpanzees no longer needed for research. Current chimpanzee owners will transfer title of the animals to the sanctuary system. Chimpanzees will only enter the sanctuary system when their owners determine the chimpanzee to no longer be appropriate for research (for example, due to advanced age or infections).

S. Rep. No. 106-494 at 3. The Senate Report shows that Congress intended for the federal sanctuary system to provide lifetime care for chimpanzees that are no longer appropriate for research due to advanced age, infections, or similar circumstance. *Id*. And so, the legislative history for the CHIMP Act makes clear that Congress recognized that older and sicker chimpanzees, such as the APF chimpanzees, would enter the federal sanctuary system.

The Government's reading of the CHIMP Act to afford discretion to NIH with regards to determining whether to transfer a surplus chimpanzee to the federal sanctuary system is also not persuasive for several reasons.

The Government first argues that the word "accepted," as used in subsection (c) of the Act, should be interpreted to mean that NIH is required to accept a surplus chimpanzee only after the chimpanzee has been offered for entry into the federal sanctuary system. Def. Mem. at 4. Given this, the Government maintains that there has been no offer with regards to the APF chimpanzees for NIH to accept, due to these chimpanzees' frail health.

The Government also correctly observes that Section (d)(4) of the CHIMP Act provides certain standards for the permanent retirement of chimpanzees that are not owned by the Federal Government. 42 U.S.C. § 283m(d)(4). But, to the extent that this provision gives NIH any discretion regarding whether to *accept* certain chimpanzees into the federal sanctuary system, this provision does not apply to surplus chimpanzees like the APF chimpanzees.[4] *Id*.

And so, the Government's reading of the CHIMP Act to afford such discretion to NIH is not convincing.

---

[4] The owners of non-surplus chimpanzees would offer the chimpanzees to the Government for admittance into the sanctuary system before the chimpanzee would be transferred into the sanctuary system. *See* 42 U.S.C. § 283m(d)(4); s*ee also* 42 U.S.C. § 283m(d)(2)(K) ("the Secretary may, in the discretion of the Secretary, accept into the system chimpanzees that are not surplus chimpanzees"). *Cf. id.* § 283m(d)(4)(B), (C) (identifying circumstances when "the Secretary may deny [a non-federal] chimpanzee acceptance into the system").

10

The Government's reliance upon certain regulations implementing the Animal Welfare Act, to circumvent the transfer mandate in the CHIMP Act, is also misplaced. These regulations require that: (1) no research facility "shall transport in commerce any . . . nonhuman primate unless the . . . nonhuman primate is accompanied by a health certificate executed and issued by licensed veterinarian" and (2) if a nonhuman primate is obviously ill, injured, or in physical distress, it must not be transported in commerce, except to receive care for the condition." 9 C.F.R. §§ 2.38(h)(1) and 3.90(c). Plaintiffs argue with persuasion that these regulations can be read in harmony with the mandate in the CHIMP Act that all surplus chimpanzees be transferred to the federal sanctuary system.

The plain text of Section 3.90(c) provides an exception to the ban on the transport of ill chimpanzees, when the purpose of the transport is to receive veterinary care–which would appear to be implicated by the transfer of surplus chimpanzees to the federal sanctuary system. The requirement that a health certificate be obtained for nonhuman primates prior to transport also appears to be directed at ensuring that the animal is free of conditions that would endanger the animal or public health. But, there is no requirement in this regulation that a veterinarian assess a chimpanzee's overall health prior to transport. More significantly, to the extent these regulations could be read to conflict with the plain terms of the CHIMP Act, the CHIMP Act must control.[5] *Texas v. EPA*, 726 F.3d 180, 195 (D.C. Cir. 2013); *see also Estate of Edna V.T. Peters v. Comm'r of Internal Revenue*, 386 F.2d 404, 407-08 (4th Cir. 1967) ("[C]learly in the event of conflict [between a statute and a regulation], the statutory provision would prevail."). And so, the AWA's implementing regulations simply cannot circumvent the mandatory requirement to transfer the APF chimpanzees to CHIMP Haven.

The Government's reliance upon the CHIMP Act's reference to the National Research Council's 1997 report is similarly misplaced. The CHIMP Act states that NIH "shall consider the recommendations of the National Research Council applicable to surplus chimpanzees that are made in the report published in 1997 and entitled 'Chimpanzees in Research-Strategies for Their Ethical Care, Management, and Use.'" 42 U.S.C. § 283m(d)(1). But, this portion of the

---

[5] The Government's argument that the Court's reading of the CHIMP Act conflicts with the AWA is equally unavailing. Def. Mot. at 6. ECF No. 50. It is the AWA's implementing regulations, not the statute itself, that prohibit the transport of primates who are obviously ill, injured, or in physical distress. The Court also does not read the AWA's requirement that federal facilities comply with the statute's regulations to prohibit the transfer of the APF chimpanzees. *See* 7 U.S.C. § 2144.

Act does not address the transfer of chimpanzees to the federal sanctuary system. *Id*. Rather, this provision addresses the standards of operation for the sanctuary system itself. *Id*.

While the Government argues that the operation of the federal sanctuary system cannot be separated from transport of chimpanzees to that system, the CHIMP Act does, in fact, address these two issues in different parts of the statute. *Compare* 42 USC § 283m(c) (acceptance) *with* 42 USC § 283m(d) (standards for permanent retirement of surplus chimpanzees). And so, the Court is not persuaded that Congress intended for the subject report to govern NIH's decision to transfer surplus chimpanzees to the federal sanctuary system.

Of course, the Court recognizes and appreciates the difficult policy and practical considerations that NIH must confront in determining how best to ensure the health and safety of the frailest APF chimpanzees, when transporting these chimpanzees to the federal sanctuary system. NIH's decision to deem the frailest APF chimpanzees ineligible for transfer to CHIMP Haven is, therefore, understandable. But, the method appropriate avenue for resolving these important concerns is to pursue these matters with the appropriate policymakers within the legislative branch.

And so, the Court must also conclude that the Ineligibility Decision is inconsistent with this statutory requirement. *See Perez v.* Cuccinelli, 949 F.3d 865, 872 (4th Cir. 2020) ("Needless to say, if statutory language is clear and unambiguous, an agency's interpretation thereof is not entitled to deference.").

### B. The Proper Remedy In This Action Is Not Clear

Having concluded that the Ineligibility Decision is inconsistent with the plain terms of the CHIMP Act, the Court must next consider the appropriate remedy in this case for Count I of the complaint. In this regard, the Court must agree with the Government that Plaintiffs' requested remedy is not clear. Plaintiffs suggest that vacatur of the Ineligibility Decision and a remand of this matter to NIH would restore the APF chimpanzee's eligibility for retirement. Pl. Mem. at 24. But, this remedy appears to be unwarranted, because all APF chimpanzees are currently eligible for consideration for transfer to Chimp Haven. Plaintiffs also argue that a remand of this matter would ensure that NIH transports the APF chimpanzees to Chimp Haven expeditiously. Pl. Mem. at 24. But, again, it is not clear that this remedy is consistent with a determination that the APF chimpanzees cannot be deemed permanently ineligible for transfer to

the federal sanctuary system. And so, Plaintiffs must clarify the relief that they seek in this litigation.

## V. CONCLUSION

In sum, the plain and unambiguous language of the CHIMP Act mandates the transfer of all APF chimpanzees to CHIMP Haven. Given this, the Ineligibility Decision is contrary to the CHIMP Act. Plaintiffs have not, however, sufficiently explained the relief that they seek with regards to Count I of the complaint. And so, for the foregoing reasons, the Court:

1. **GRANTS-in-PART** Plaintiffs' motion for partial summary judgment;

2. **DENIES** the Government's cross-motion for summary judgment; and

3. **DENIES** the Government's motion to dismiss.

The Court also **DIRECTS** the parties to **FILE** a joint status report, on or before **January 13, 2023,** setting forth their respective views on the following matters:

(a) The relief that Plaintiffs seek in Count I of the complaint; and

(b) How this matter should proceed, in light of this Memorandum Opinion and Order.

Judgment is entered accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

                                            s/Lydia Kay Griggsby
                                            LYDIA KAY GRIGGSBY
                                            United States District Judge