IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, *et al.*, ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 21-cv-00121-LKG |
| v. ) ) | Dated:  December 13, 2023 |
| NATIONAL INSTITUTES OF HEALTH, *et al.*, ) ) ) ) | |
| Defendants. ) ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

This civil action involves a challenge to the National Institute of Health's ("NIH") decision to not transfer all chimpanzees housed at the Alamogordo Primate Facility (the "APF Chimpanzees") to a retirement sanctuary known as "Chimp Haven" (the "Ineligibility Decision"), brought by The Humane Society of the United States ("The Humane Society"), The Human Society Legislative Fund, Animal Protection of New Mexico, and several individually named plaintiffs. *See generally*, ECF No. 1.  On December 13, 2022, the Court issued a memorandum opinion and order (the "December 13, 2022, Decision") that held that the Ineligibility Decision is inconsistent with the CHIMP Act, because that statute mandates the transfer of all APF Chimpanzees to Chimp Haven.  ECF No. 53.  And so, the Court vacated the Ineligibility Decision and remanded this matter to NIH for further consideration consistent with the Court's memorandum opinion and order (the "Remand Order").  ECF No. 58.

The parties have filed supplemental briefs on whether the Court should direct NIH to transfer the APF Chimpanzees to Chimp Haven, "as space becomes available," as the remedy in this matter.  ECF Nos. 61, 64 and 70.  For the reasons that follow, Plaintiffs have not shown that there are extraordinary circumstances present in this case to warrant this proposed remedy.  And

so, the Court declines to direct NIH to transfer the APF Chimpanzees to Chimp Haven as space becomes available in the Remand Order.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background[2]

As background, on October 24, 2019, NIH announced that not all APF Chimpanzees would be transferred to Chimp Haven. ECF No. 1 at ¶ 10. And so, certain APF Chimpanzees remain housed at APF's secured facility. *Id.* at ¶ 11. It is undisputed that the reason that these chimpanzees have not been transferred to Chimp Haven include: (1) the need for daily diabetes medication; (2) pre-diabetes; (3) cardiovascular disease; (4) poorly controlled hypertension; (5) renal conditions; (6) arthritis; (7) a leg amputation; and (8) the existence of social bonds with other APF Chimpanzees that, if disrupted, could negatively affect a chimpanzee's psychological well-being. *Id.* at ¶ 93; ECF No. 41 at 22-23. Because NIH has deemed these remaining chimpanzees to be the frailest, the agency maintains that it has transferred all chimpanzees that could be safely moved to Chimp Haven. ECF No. 41 at 6.

On December 13, 2022, the Court issued a memorandum opinion holding that the Ineligibility Decision is inconsistent with the CHIMP Act, because the CHIMP Act mandates the transfer of all APF Chimpanzees to Chimp Haven. ECF No. 54. Specifically, the Court determined that the plain and unambiguous language of the CHIMP Act requires that all APF Chimpanzees be transferred to the federal sanctuary system. *Id.* at 7-12.

---

[1] The facts recited in this memorandum opinion are taken from the complaint; Plaintiffs' supplement brief on remedies and the Defendants' supplemental briefs on remedies. ECF Nos. 1, 61, 64 and 70.

[2] In 2000, Congress passed the CHIMP Act, to "provide for the lifetime care of chimpanzees that have been used, or were bred or purchased for use, in research conducted or supported by the National Institutes of Health, the Food and Drug Administration, or other agencies of the Federal Government." 43 U.S.C. § 283(m). The CHIMP Act accomplishes this goal through the funding of a federal sanctuary system. *Id.* To that end, a NIH working group has recommended that: (1) NIH relocate all surplus chimpanzees to a retirement sanctuary known as "Chimp Haven," unless doing so is "extremely likely" to shorten their lives; (2) NIH should develop a standardized approach for evaluating the health of individual surplus chimpanzees to inform relocation decisions; and (3) all facilities housing NIH-owned or supported chimpanzees should adopt the American Society of Anesthesiologists' standardized five-category scale to categorize the health status of individual surplus chimpanzees. ECF No. 1 at ¶ 81.

The Court also held that Plaintiffs' proposed remedy in this APA matter was not clear. *Id.* at 12-13. And so, the Court issued the Remand Order, vacating the Ineligibility Decision and remanding this matter to NIH for further consideration consistent with the December 13, 2022, Decision. ECF Nos. 54 and 58. The Court also directed the Government to provide certain information about the APF Chimpanzees and directed the parties to submit supplemental briefs on Plaintiffs' proposed remedy in this matter. ECF No. 58.

In their supplemental brief, Plaintiffs request that that the Court issue a modified Remand Order: (1) directing NIH to comply with the Court's December 13, 2022, Decision and the plain language of the CHIMP Act, "by transferring each and all of the chimpanzees remaining at APF to the federal sanctuary, Chimp Haven, as space becomes available at the sanctuary" and (2) retaining jurisdiction over this matter until there are no chimpanzees remaining at APF and requiring biannual reports from NIH on its progress transferring the APF Chimpanzees. ECF No. 64 at 3. The Government opposes this remedy. ECF Nos. 61 and 70.

B.     **Procedural Background**

On December 13, 2022, the Court issued a memorandum opinion holding that NIH's decision to not transfer all APF Chimpanzees to Chimp Haven was contrary to the plain and unambiguous language of the CHIMP Act and determining that the Plaintiffs have not sufficiently explained the relief that they seek with regards to Count I of the complaint. *See generally*, ECF No. 54.

On February 9, 2023, the parties participated in a hearing regarding the remedy in this case. ECF Nos. 57 and 63. Thereafter, the Court issued the Remand Order: (1) vacating the Ineligibility Decision and remanding the matter to NIH for further consideration; (2) directing the Defendants to comply with the CHIMP Act's requirement that "all surplus chimpanzees . . . shall be accepted into the sanctuary system;" and (3) directing the parties to submit supplemental briefs on the proposed remedy in this matter. ECF No. 58.

On March 3, 2023, Defendants filed their initial supplemental brief. ECF No. 61. On March 30, 2023, Plaintiffs filed their responsive supplemental brief. ECF No. 64. On May 4, 2023, Defendants filed a reply. ECF No. 70.

These matters having been fully briefed, the Court addresses the appropriate remedy in this case.

## III. LEGAL STANDARDS

### A. Relief In Administrative Procedure Act Cases

The Supreme Court has held that, as a general matter, district courts in Administrative Procedure Act ("APA") cases sit only to review an agency's determination, and not to take or order action in place of the agency. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943). Given this, the role of district courts in APA cases "is limited to considering whether the announced groups for the agency decision comport with the applicable legal principles." *Port of Portland v. United States*, 408 U.S. 811, 842 (1972). And so, generally "the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the [agency] for reconsideration." *Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20 (1952).

But, this Court has recognized that a district court may enter an order beyond invalidating an agency action in APA cases in "extraordinary circumstances." *See Am. Academy of Pediatrics v. Food & Drug Admin.*, 399 F. Supp. 3d 479, 483 (D. Md. 2019) (citations omitted). And so, in "extraordinary circumstances" district courts reviewing agency action will "issue detailed remedial orders." *Id.* (citations omitted).

## IV. LEGAL ANALYSIS

### A. Plaintiffs Have Not Shown That Their Proposed Remedy Is Warranted

In their supplemental brief, Plaintiffs request that the Court enter a modified Remand Order: (1) directing NIH to comply with the Court's December 13, 2022, Decision and the plain language of the CHIMP Act by transferring each and all of the chimpanzees remaining at APF to Chimp Haven, as space becomes available at the sanctuary and (2) retaining jurisdiction over this matter until there are no chimpanzees remaining at APF and requiring biannual reports from NIH on its progress transferring chimps. ECF No. 64 at 3. For the reasons that follow, Plaintiffs have not shown that extraordinary circumstances exist to grant their proposed remedy. And so, the Court declines to direct NIH to transfer the remaining APF Chimpanzees to Chimp Haven, "as space becomes available."

Plaintiffs have brought this action pursuant to the APA and the CHIMP Act. *See generally*, ECF No. 1. The Supreme Court has long recognized that the role of the courts in APA cases, generally, "is limited to considering whether the announced grounds for the agency decision comport with the applicable legal principles." *Port of Portland*, 408 U.S. at 842. This Court has, however, recognize that a district court may enter an order beyond invalidating an agency action in "extraordinary circumstances." *See Am. Academy of Pediatrics*, 399 F. Supp. 3d at 483. Plaintiffs have not shown that such extraordinary circumstances are present here for several reasons.

First, Plaintiffs argue that there are extraordinary circumstances in this case to warrant an order directing NIH to transfer all APF Chimpanzees to Chimp Haven, "as space becomes available," because they are concerned that NIH will disregard the Court's Remand Order. ECF No. 64 at 8-15. But the Government unequivocally states in its supplemental brief that NIH will comply with the Court's Remand Order. ECF No. 70 at 1-2. There is also no evidence before the Court to indicate or suggest that NIH will disregard the Court's Order directing Defendants to comply with the CHIMP Act's requirement that "all surplus chimpanzees . . . shall be accepted into the sanctuary system." Given this, Plaintiffs' concern that Defendants will disregard the Remand Order is unsubstantiated.

Plaintiffs' argument that their proposed remedy is necessary, because the only legally permissible outcome in this case is that NIH transfer all APF Chimpanzees to Chimp Haven, is also unavailing. ECF No. 64 at 6-8. Plaintiffs' argument in this regard appears to be based upon the ongoing disagreement among the parties about the definition of a "moribund" chimpanzee, given their apparent agreement that NIH is not obligated to transfer moribund chimpanzees to Chimp Haven under the CHIMP Act.[3]

---

[3] NIH states in its supplemental brief that it reads the Court's December 13, 2022, Decision to hold that the "CHIMP Act mandates the transfer of all APF Chimpanzees to Chimp Haven," ECF No. 54 at 13, unless a chimpanzee is "moribund." ECF No. 70 at 3. NIH further states that, "[s]ince before this litigation began, NIH has used that term to refer to chimpanzees placed in Class V on the rating scale NIH created after a lengthy scientific process—those animals with "life-threatening, systemic disease that poses a constant threat and could result in abrupt death." *Id.* And so, NIH previously categorized each remaining APF Chimpanzee as in Class V, and thus as "moribund" on the agency's understanding of that term. *Id.* But, NIH plans to annually reevaluate the APF Chimpanzees, as urged by Congress, to consider whether they continue to be "moribund" or if they are no longer "moribund" and can be safely transported

The Court neither addressed the definition of a "moribund" chimpanzee, nor determined whether such chimpanzees must be transferred to federal sanctuary, in the December 13, 2022, Decision. *See* ECF No. 54. Rather, the Court simply observed in a footnote in that decision that:

> The parties appear to agree that NIH is not obligated to transfer a "moribund" chimpanzee to sanctuary. Pl. Mem. at 4. ECF No.45; Def. Mem. at 4-5. ECF No. 50. Plaintiffs also acknowledge that the CHIMP Act affords NIH discretion to determine whether a federal chimpanzee is surplus, *i.e.*, no longer needed for research purposes.

*Id.* at 9, n. 3. And so, neither party properly relies upon the December 13, 2022, Decision to support their respective views on this particular issue.[4]

The Defendants do, however, persuasively argue that the remedy requested by Plaintiffs in this APA matter is not practical, given the unique issues related to the transfer of the APF Chimpanzees and the discretion afforded to NIH to address the health and safety of these chimpanzees. *See* ECF No. 61 at 3-6. Notably, the parties agree that there is no definitive timeline for when space at Chimp Haven will actually be available to accommodate the APF Chimpanzees. Indeed, it is undisputed that Chimp Haven does not currently have any space available to accommodate the APF Chimpanzees. ECF No. 62 at 4.

Plaintiffs also acknowledged during the February 9, 2022, hearing in this matter that space may not become available at Chimp Haven to accommodate any APF Chimpanzees for several years. ECF Nos. 57 and 63. Given this, neither the parties, nor the Court can be certain of when space will become available at Chimp Haven for the transfer of the APF Chimpanzees to that sanctuary, making Plaintiffs' proposed remedy impractical.

Plaintiffs' requested remedy is also not appropriate, because there is no dispute in this case that Defendants must consider a number of factors, beyond the availability of space at Chimp Haven, in deciding when and how to transfer the APF Chimpanzees. As Defendants explain in their supplemental brief, the timing of the transfer of the APF Chimpanzees to Chimp is dictated by several factors, including considerations about the suitability of certain

---

to Chimp Haven. *Id.* By comparison, Plaintiffs define a "moribund" chimpanzee as a chimpanzee that is "at the point of death." ECF No. 64 at 11.

[4] Because the parties have not briefed the issue of the proper definition of a "moribund" chimpanzee, the Court does not resolve this issue within the context of the parties' remedies briefing.

6

chimpanzees to relocate to Chimp Haven and the appropriate conditions for shipping chimpanzees to that sanctuary. *See* ECF No. 61 at 3-6.

For example, Defendants explain that there are other non-federal facilities currently providing care to chimpanzees who may have chimpanzees that are better suited for a transfer to Chimp Haven, whenever a vacancy arises. *Id.* at 4. Defendants also explain that the transfer process for the APF Chimpanzees involves close collaboration between APF and Chimp Haven, regarding social groupings and the health considerations for these chimpanzees. ECF No. 41-3, Anderson Decl. ¶ 29. And so, the unrebutted evidence before the Court makes clear that both the sending and receiving facilities must work closely together and agree on the transfer of the APF Chimpanzees. *Id.*

As the Court observed in the December 13, 2022, Decision, NIH has unique expertise regarding the transfer and care of the APF Chimpanzees that must also be taken into account when considering whether to grant Plaintiffs' proposed remedy. ECF No. 54 at 3-4, 12. Notably, Congress has afforded discretion to NIH to make decisions about how best to safely accomplish the transfer of the APF Chimpanzees. These considerations also caution against the Court imposing a deadline, or other directives, on NIH regarding the timing and method of the transfer of the APF Chimpanzees.

Indeed, as the Court observed in the December 13, 2022, Decision, "the Court recognizes and appreciates the difficult policy and practical considerations that NIH must confront in determining how best to ensure the health and safety of the frailest APF Chimpanzees, when transporting these chimpanzees to the federal sanctuary system." ECF No, 53 at 12. Plaintiffs proposed remedy would improperly supplant NIH's discretion in this regard.

And so, for the aforementioned reasons, the Court declines to direct NIH to transfer all APF Chimpanzees to Chimp Haven "as space becomes available."

**B.    The Court Need Not Retain Jurisdiction Over This Matter**

Having determined that it is not appropriate to direct NIH to transfer the APF Chimpanzees to Chimp Haven, "as space becomes available," the Court next considers whether it is appropriate to retain jurisdiction over this dispute until all APF Chimpanzees have been transferred to Chimp Haven. Plaintiffs ask the Court to retain jurisdiction until all APF

Chimpanzees have been transferred to Chimp Haven and to require NIH to provide periodic status reports on its progress in transferring these chimpanzees to the federal sanctuary system. ECF No. 64. But, as discussed above, the Court will not modify the Remand Order to direct NIH to transfer the APF Chimpanzees to Chimp Haven, because such a remedy is not appropriate in this APA matter.

Because the Court declines to modify the Remand Order in this regard, there appears to be no reason for the Court to retain jurisdiction for the purposes requested by Plaintiffs. And so, the Court also declines to retain jurisdiction over this matter, pending the transfer of the APF Chimpanzees to Chimp Haven.

### V.     CONCLUSION

In sum, Plaintiffs have not shown that extraordinary circumstances are present in this APA matter to warrant the remedy that they seek. And so, for the foregoing reasons, the Court declines to modify the Remand Order to include Plaintiffs' requested remedy.

A separate Order shall issue.

**IT IS SO ORDRED.**

s/Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
United States District Judge